## UNITED STATES v. LUMBER INSTITUTE OF ALLEGHENY COUNTY et al.

No. 10529.

District Court, W. D. Pennsylvania.

July 30, 1940.

Geo. Mashank, Acting U. S. Atty., of Pittsburgh, Pa., and M. Neil Andrews, R. McDonald Gray, and Irving I. Axelrad, Sp. Assts. to Atty. Gen., for the United States.

Reed, Smith, Shaw & McClay, Chas. Denby, Jr., and Elder W. Marshall, all of Pittsburgh, Pa., for Lumber Institute of Allegheny County, Inc., and others.

Wright & Rundle, of Pittsburgh, Pa., for T. J. Ingram.

McCrady, McClure, Nicklas & Hirschfield, of Pittsburgh, Pa., for Howard McCrady and others.

Reed, Smith, Shaw & McClay, of Pittsburgh, Pa., for E. A. Diebold and others.

R. J. Esler, of Pittsburgh, Pa., for Atlas Lumber & Supply Co., Inc.

W. O. Maclean, of Pittsburgh, Pa., for Keystone Lumber Co.

Frank S. Delp, of Pittsburgh, Pa., for R. D. Hoag and another.

Duff, Scott & Smith and S. L. Fuss, all of Pittsburgh, Pa., for S. A. Johns.

Patterson, Crawford, Arensberg & Dunn and Robt. Ferguson, all of Pittsburgh, Pa., for Master Builders Ass'n and another.

J. P. Fife and Thos. E. Whitten, both of Pittsburgh, Pa., for Wm. L. Hutcheson and others.

Chas. H. Tuttle, of New York City, and Jos. O. Carson, of Indianapolis, Ind., for other defendants.

SCHOONMAKER, District Judge.

The several defendants in this case other than the Master Builders' Association of Allegheny County, have filed separate demurrers to the indictment in this case, on the ground that the facts alleged in the indictment do not constitute a violation of the laws of the United States.

The indictment contains two counts: (1) charging the defendants with unlawful conspiracy in restraint of trade and commerce in millwork among the several states of the United States in violation of Section 1 of the Act of Congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies," known as the Sherman Act; and (2) a like conspiracy with reference to Section 2 of the same act. 15 U.S.C.A. §§ 1, 2.

The defendants involved are the Lumber Institute of Allegheny County, certain officials and individual members thereof; the Master Builders' Association, the Secretary thereof; ten officers of the United Brotherhood of Carpenters and Joiners of America; the Carpenters District Council of Pittsburgh, six officers thereof; Local Union No. 422, a local labor union affiliated with the Brotherhood, and two officers of said local union.

The facts in the indictment upon which the violation of these two sections of the Sherman Act is charged, may be briefly summarized as follows:

For some time prior to the return of this indictment, practically all of the millwork manufacturers of Allegheny County belonged to an association known as the Lumber Institute of Allegheny County, which institute presently published, and for some time past has published, price lists from which its members quote uniform discounts, and thereby fix the prices of millwork in Allegheny County by agreement among themselves. By means of a "Listing Bureau," identical estimates are given to various members of the Institute who are bidding on a particular construction job; and the members by basing their prices on this estimate, suppress competitive bidding and maintain non-competitive prices. The members of this Institute employ exclusively members of the United Brotherhood of Carpenters and Joiners of America; and a large majority of the contractors doing business in Allegheny County, most of whom belong to the Master Builders' Association of Allegheny County, likewise employ exclusively members of the same Brotherhood to install millwork.

The indictment specifically differentiates between the term "stock" millwork and "specialty" millwork. The indictment further sets out that almost all the stock millwork used in Allegheny County is manufactured by mass production methods in states other than Pennsylvania. Specialty millwork, to the contrary, cannot be made by such methods, but requires less machinery and more skilled labor than is the case with stock millwork. This specialty millwork is manufactured on order or in small quantities by Allegheny County millwork manufacturers who are unable to produce stock millwork as efficiently or economically as are the manufacturers located outside of Pennsylvania, because they do not have the equipment necessary for such manufacture. If, therefore, Allegheny County millwork manufacturers obtain orders for stock millwork, they must buy it outside of Pennsylvania, or make it in small quantities at a greatly increased cost to the ultimate consumer. By reason of this manufacturing differential, millwork manufacturers located outside of Pennsylvania have been, and are, able to ship stock millwork into Allegheny County at a lower price than it can be made by millwork manufacturers within that County, even though they did not fix an unreasonable price. Prior to the formation of the agreement described more fully below, in excess of ninety per cent of all stock millwork used in Allegheny County was manufactured outside of Pennsylvania, and ship-

ped in interstate commerce into Allegheny County. A substantial portion of this millwork was consigned to builders, contractors, or millwork jobbers, and shipped directly to buildings in process of construction; other stock millwork was shipped in interstate commerce to millwork jobbers, and by them delivered to buildings under construction. It was the object of the conspiracy to keep this millwork out of Allegheny County; and insofar as the conspiracy was successfully carried out, it was barred therefrom.

Due to the facts set forth above, the members of the Lumber Institute who manufactured millwork were not in a position to compete successfully with the large mass-producing millwork manufacturers located outside of the State.

The work of manufacturing and installing millwork in Allegheny County has been done practically exclusively by members of the Brotherhood due to closed-shop labor agreements between the Brotherhood and the Lumber Institute of Allegheny County, and between the Brotherhood and the Master Builders' Association of Allegheny County. Because of this fact, the defendants are in a position to restrain successfully the flow of interstate commerce in millwork. This, it is alleged, was the objective of all the defendants named in this indictment. It is stated that the conspiracy to restrain interstate commerce was in part carried out by the refusal of the defendant union and employees thereof to install millwork manufactured outside the state on various occasions, and that the flow of interstate commerce was further obstructed by threats of strikes and by other forms of intimidation and coercion. It is further stated that the union refused to install millwork manufactured outside the State of Pennsylvania irrespective of the union-conditions under which the millwork was manufactured. Thus, the indictment states that the objective of the defendants, including the union-defendants, was to give Allegheny County millwork manufacturers business that they could not obtain otherwise in normal competition with out-of-state manufacturers, and to enable them, because of the lack of such competition, not only to charge the higher prices they must secure, but arbitrarily and by agreement, to fix the price of millwork. It is stated further that the union-defendants

did not allow millwork manufactured outside the State of Pennsylvania to come into Allegheny County if it did not bear the union label. Millwork manufacturers were not permitted to use this label, in the words of the indictment:

"Notwithstanding that all of them employed some union labor; that all of them were abiding by the terms of their labor agreements concerning minimum wages, hours, and working conditions; that most of them employed members of the Brotherhood; that some of them employed exclusively members of the Brotherhood; and that some of them bargained collectively with the Brotherhood as a result of certification by the National Labor Relations Board that a given Local of the Brotherhood was to be the sole bargaining agency. Some of the aforesaid millwork manufacturers were denied permission by the Brotherhood to use the label because they had labor agreements with International Wood Workers of America, a bona fide labor union affiliated with the Congress for Industrial Organization. These manufacturers were denied the label irrespective of what wages, hours, and working conditions they had agreed upon with their employees; even though the wages which the said manufacturers had agreed upon with their employees and were paying their employees no less than the wages fixed by the Brotherhood for factories in the same area and even though in some instances the local union of the International Wood Workers of America had been certified by the National Labor Relations Board as the sole bargaining agency for the employees of the manufacturers."

Although millwork manufacturers located in Beaver County, Pennsylvania, were fully organized by the Brotherhood, they were not allowed to ship their products into Allegheny County by reason of a clause inserted in their labor-agreement with the Brotherhood, which provided that the Beaver County mills could not ship their millwork into any locality where the wage-rate was higher than their own. The Brotherhood required this agreement, well knowing that the wage-rate in Allegheny County was higher than that which the Brotherhood was insisting upon in Beaver County, and insisted upon it for the express purpose of preventing the products of the aforesaid Beaver County

194

mills to be shipped into Allegheny County pursuant to the conspiracy described in this indictment. No other motive is stated in the indictment for the union requiring this clause in the Beaver County labor agreements. The same facts, it is alleged, also constitute a violation of Section 2 of the Sherman Act, as indicated above.

The demurring defendants contend that this indictment is insufficient in law, because: (1) conclusions rather than facts are pleaded; (2) no restraint of interstate commerce is sufficiently alleged; and (3) the acts performed by the defendants, as set forth in the indictment, are exempted from the operation of the Sherman Act by reasons of Sections 6 and 20 of the Clayton Act, 15 U.S.C.A. § 17, 29 U.S.C.A. § 52.

In our opinion, there is no merit in defendants' contention that conclusions, and not facts, are pleaded. The summary of facts pleaded as hereinbefore set forth, clearly establishes that the indictment pleads facts, and not conclusions. In our opinion, too, these facts sufficiently allege a conspiracy in restraint of interstate commerce. The indictment alleges that defendants combined and conspired; that their purpose was directly to restrain interstate commerce by stopping millwork moving in such commerce by threats of refusal, and actually refusing to install such millwork after its arrival in Allegheny County; that such restraint was undue, unreasonable, and without justification; that the means employed included strikes, threats of strikes, intimidation, and coercion; that the motive for imposing this direct restraint on commerce was unworthy and illegal; and that these restraints were not only planned, but to a degree carried out.

This view is supported by Loewe v. Lawlor, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann.Cas. 815; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; United States v. Brims, 272 U.S. 549, 47 S.Ct. 169, 71 L.Ed. 403; Bedford Cut Stone Company v. Journeyman Stone Cutters' Ass'n, 274 U.S. 37, 47 S.Ct. 522, 71 L.Ed. 916, 54 A.L.R. 791; United States v. Painters District Council of Chicago, D.C., 44 F.2d 58, affirmed 284 U.S. 582, 52 S.Ct. 38, 76 L.Ed. 504.

■ As to the contention of the defendants that the acts complained of in the indictment are exempt from the operation of the Sherman Act by provisions 6 and 20 of the Clayton Act, we regard this contention as without merit. Both the Government and the defendants rely on Duplex Printing Press Company v. Deering, 254 U.S. 443, 41 S.Ct. 172, 178, 65 L.Ed. 349, 16 A.L.R. 196, as sustaining their position. As we read this case, the Supreme Court held that the restrictions in the Clayton Act applied to acts committed by parties concerned in "a 'dispute concerning terms or conditions of employment.'" There is no dispute here concerning terms or conditions of employment. Therefore, the Clayton Act does not apply.

We, therefore, conclude that the demurrers to the indictment must be overruled. An order may be submitted accordingly.